# No. 25-10887

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Nathan Crawford,

Plaintiff - Appellant

v.

West Texas A&M University,

Defendant - Appellee

---

**On Appeal from**

United States District Court for the Northern District of Texas

2:23-CV-152

---

## BRIEF OF APPELLANT NATHAN CRAWFORD

---

SUBMITTED BY:

Kyle Thomas Carney
Carney Law PLLC
9800 Hillwood Parkway, Ste. 140
Fort Worth, TX 76177

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees:** |
|---|---|
| West Texas A&M University | Jameson Joyce of Office of the Attorney General Austin, TX |
| West Texas A&M University | Mohmed Patel of Office of the Texas Attorney General Austin, TX |

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| Nathan Crawford | Kyle Carney of Carney Law, P.L.L.C. Fort Worth, TX |

S/Kyle Thomas Carney
Attorney of record for
Nathan Crawford

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Nathan Crawford does not request oral argument in this appeal. This case involves retaliation for engaging in protected employment activity arising under Title VII of the Civil Rights Act of 1964. The issues in this case involve applying well-settled precedent of this Court showing that the district court erred in granting Appellee's motion for summary judgment.

Crawford believes the record evidence and applicable law cited in his brief will fully resolve the issues on appeal and warrant reversal of the summary judgment entered against her. Counsel for Crawford, however, stands ready to participate in oral argument if the Court believes such argument would further aid in resolving this appeal.

# TABLE OF CONTENTS

Contents Page(s)

CERTIFICATE OF INTERESTED PERSONS .......... II

STATEMENT REGARDING ORAL ARGUMENT .......... III

TABLE OF CONTENTS .......... IV

TABLE OF AUTHORITIES .......... 1

JURISDICTIONAL STATEMENT .......... 4

STATEMENT OF THE ISSUES .......... 4

Appellant's Brief .......... 5

STATEMENT OF THE CASE .......... 5

SUMMARY OF THE ARGUMENT .......... 15

ARGUMENT .......... 18

A. Standard of Review .......... 18

B. Crawford's complaints were properly exhausted, and the district court erred in disregarding background evidence in support of the actionable conduct timely filed within the 300-day period. .......... 19

C. Crawford presented direct evidence of retaliation that was wrongly disregarded. .......... 21

D. WTAMU's Purported Explanations Were Mere Pretext for Retaliation .......... 24

E. The District Court Erred in Concluding Retaliatory Acts were not "Materially Adverse" .......... 32

F. WTAMU Failed to Negate Evidence of Causation. .......... 33

CONCLUSION....................................................................................35

CERTIFICATE OF SERVICE ......................................................................36

CERTIFICATE OF COMPLIANCE ...............................................................37

# TABLE OF AUTHORITIES

## CASES

*Ion v. Chevron USA, Inc.*,
731 F.3d 379 (5th Cir. 2013) .......... 18

*Rutherford v. Harris County*,
197 F.3d 173 (5th Cir. 1999) .......... 19

*Olivarez v. T-Mobile USA, Inc.*,
997 F.3d 595 (5th Cir. 2021) .......... 20

*Moore v. Cricket Communs., Inc.*,
764 F. Supp. 2d 853 (S.D. Tex. 2011) .......... 20

*Fine v. GAF Chemical Corp.*,
995 F.2d 576 (5th Cir. 1993) .......... 21

*Sanchez v. Standard Brands, Inc.*,
431 F.2d 455 (5th Cir. 1970) .......... 21

*Fabela v. Socorro Indep. Sch. Dist.*,
329 F.3d 409 .......... 22, 23

*Moore v. U.S. Dep't of Agric.*,
55 F.3d 991 (5th Cir. 1995) .......... 23

*Brown v. E. Miss. Elec. Power Ass'n*,
989 F.2d 858 (5th Cir. 1993) .......... 23

*Fierros v. Texas Department of Health*,
274 F.3d 187 (5th Cir. 2001) .......... 22, 23

*Portis v. First Nat'l Bank*,
34 F.3d 325 (5th Cir. 1994) .......... 23

*January v. City of Huntsville*,
74 F.4th 646 (5th Cir. 2023) .......... 25, 26

*Wantou v. Wal-Mart Stores Tex., L.L.C.*,
23 F.4th 422 (5th Cir. 2022) ........................................................26

*Brown v. Wal-Mart Stores E., L.P.*,
969 F.3d 571 (5th Cir. 2020) ........................................................26

*Garcia v. Prof'l Contract Servs.*,
938 F.3d 236 (5th Cir. 2019) ........................................................26

*Doe v. William Marsh Rice Univ.*,
67 F.4th 702 (5th Cir. 2023)..........................................................26

*Hamilton v. Dallas County*,
79 F.4th 494 (5th Cir. 2023)..........................................................32

**STATUTES**

Title 42 U.S.C. § 200 ..................................................................4

Title 28 U.S.C. § 1291 ..................................................................4

**FEDERAL RULES**

Fed. R. Civ. P. 56 ........................................................................18

Fed. R. Civ. P. 8 ........................................................................ 20

Fed. R. Civ. P. 8(a)(2)................................................................. 20

Fed. R. App. P. 32(a)(7)(B) ..........................................................37

Fed. R. App. P. 32(f)......................................................................37

Fed. R. App. P. 5 ..........................................................................37

Fed. R. App. P. 32(a)(5) ...............................................................37

Fed. R. App. P. 32(a)(6) ...............................................................37

**OTHER AUTHORITIES**

*Tex. Comm. Law Enforcement*, https://www.soah.texas.gov/f-5-hearings-texas-commission-law-enforcement .................................. 16

## JURISDICTIONAL STATEMENT

Nathan Crawford appeals from the July 1, 2025 order and final judgment of the district court granting Appellee WTAMU's motion for summary judgment on Crawford's claims arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code §§ 2000a et seq. Crawford filed his notice of appeal on July 31, 2025. (ROA.1487). This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Did the district court commit reversible error by granting summary judgment to WTAMU on Nathan Crawford's Title VII retaliation claims?

# APPELLANT'S BRIEF

To the Honorable Justices of the Fifth Circuit Court of Appeals:

Nathan Crawford ("Crawford") files Appellant's Brief, which asks the Court to reverse the district court's order and summary judgment granted against him on his Title VII retaliation claims and remand the case for trial of the disputed issues of material fact.

# STATEMENT OF THE CASE

Plaintiff, Detective Nathan Crawford worked as a detective in the campus police department at West Texas A&M University (WTAMU). ROA.932-33. WTAMU is part of the Texas A&M University System (the System). *See id.*

Before he participated as a witness in a 2021 Title IX investigation, Crawford was a well-liked officer with consistently good performance evaluations. *See generally* ROA.846, 845-919 (Appx. 14 to Appl.'s Response Br., Performance Evaluations). In his deposition, Chief Burns admits that thought Crawford was a good detective, and Crawford performed his job well enough to possibly be considered to supervise patrol. ROA.722 at 120:7-22. Other witnesses in this case, including former Title IX Director, Georganna Ecker, also testified in favor of Crawford's reputation as a good officer.

ROA.447 at 34:20-22; *see also* ROA.676 at 63:21-24 (Rikel testifying that he did not hold any negative opinions about Crawford).

In 2021, the Title IX office at WTAMU investigated allegations of sex discrimination by members of the police department. ROA.338-44 (Appx. 1 to Response); ROA.442-450; *see also* Dkt. 42-1 (Ecker Memorandum, FILED UNDER SEAL); ROA.1434-39 (Det. Ferrara Declaration). Crawford spoke with the Title IX investigators in support of these allegations. ROA.340; ROA.364.. This was protected activity for purposes of Title VII. *See Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271 (2009). During his interview, Crawford warned the investigator that he was concerned with retaliation by WTAMU University Police Department (UPD) Chief Shawn Burns. ROA.364-65; ROA.388-89; Appx. 24 at 1-2 (Clarissa Streater report); ROA.445 (Ecker Depo.); ROA.754 at 7-8, (Exhibit 1 to Ecker Depo.); ROA.784; ROA.795-96 (Exhibit 5 to Ecker Depo.).

Chief Burns was given copies of the Title IX report by the respondent male officer, Aaron Price. ROA.702 at 38 (Burns admitting, "Aaron Price provided me with the draft report that was generated by the WT Title IX Office."). Price was a favorite of Chief Burns, and this partiality was well known by other UPD officers. ROA.1320. This favoritism was part of the reason the female UPD officers feared filing complaints against Price.

ROA.1258 at Crawford 00090. Upon reviewing testimony by Crawford and other officers, Chief Burns proceeded to retaliate against each of the witnesses.

Burns has a well-known reputation for squashing complaints against him and his preferred officers, and he openly threatens employees who engage in protected activity under federal law. ROA.417-18; ROA.1435 (Ferrara Decl.); ROA.446 at 29. Burns's own words describes his modus operandi:

> Burns: If I was blaming you, I would've fired you.
>
> Ferrara: For making a complaint, had I done it.
>
> Burns: If, if that's what I thought had happened, yeah. If I thought you were the root of all evil, I would've found a way to get rid of you. I would have. I would've talked to HR, I would've talked to OGC.

ROA.1237 (09-06-2022 Audio Recording of Burns); ROA.721 at 115:2-9 (Depo. Burns).

Burns had previously told the officers in a department wide meeting following a climate survey that involved conflicts including sex-discrimination complaints that "careers and bodies will be left in the wake" if the officers continued to make complaints against one another. ROA.1234 (Audio Clip of Crawford reporting this statement to investigators).

The culture of fear Burns created over time chilled officers from reporting complaints, because officers knew that if they crossed Burns, their worklife and career would be ruined. ROA.363 at 189 (Crawford Depo.) ("And nobody wants to touch you when you're in that position. You're kind of a pariah, regardless of whether you've done anything wrong … the belief that you are disfavored by Chief Burns is -- is stigma enough."); ROA.445 at 25:1-21; 26:1-25; 28:4-22; ROA.451 at 51:1-11 (Ecker describing how WTAMU administrators suddenly turned against her, contrasted with how she was not a sole decisionmaker and relied heavily on System counsel for guidance).

WTAMU representatives, including Warren Pitt (head of Human Resources), Randy Rikel (Vice President for Business and Finance, who oversees several department heads, including Title IX and UPD), and Burns (UPD Chief), admitted that WTAMU has a duty to protect employees from discrimination and retaliation during an investigation. ROA.482-84 (Pitt Depo.); ROA.656-57 (Rikel Depo.); ROA.697-98 (Burns Depo.). But not one of them could state a single thing that WTAMU did to protect the officers who offered testimony in favor of the sex discrimination complaints. ROA.483 (Pitt Depo.); ROA.656-57 (Rikel Depo.); ROA.708-09 (Burns Depo.).

After Burns reviewed the reports provided to him by Price during the 2021 Title IX investigation, Burns proceeded to retaliate against everyone involved, including the Title IX directors Georganna Ecker and her successor, Jeremy Middleton. ROA.374-76 (Crawford Depo.); ROA.445-47 (Ecker Depo.); ROA.1240 (Audio Recording of Middleton discussing WTAMU pretextual approach to the Title IX investigation).

Ecker was fired from her position as the Title IX Director after she received a report and investigated the undisputed statement Burns made about the Title IX investigators: that he was "ready to start stacking bodies, and I would like to start with the ones across the hall," referring to WTAMU's Title IX employees. ROA.710 at 70:1-2 (Burns Depo.); ROA.445-47 (Ecker Depo.). Ecker testified in her deposition that she believed Burns had a strong influence at WTAMU even with his supervisors. ROA.445-47 at 33:8-15 (Ecker Depo.). Burns himself admitted this influence when he stated to Ferrara that, if he discovered that she was the complainant, he would figure out a way to terminate by talking with Human Resources and the TAMU Office of General Counsel. ROA.1237 (09-06-2022 Audio Recording of Burns); ROA.721 at 115:2-9 (Depo. Burns).

Virtually all of the female complaining officers were either terminated or forced out of UPD, ROA.339-40; ROA.705; ROA.1436-37, except for Lt.

Barbara Ferrara Faltinek, who also participated as a witness and sued WTAMU for retaliation based on the hostile work environment at WTAMU UPD in the case styled *Barbara Ferrara-Faltinek v. West Texas A&M University*, Case No. 2:23-cv-153. ROA.1437 (Ferrara Decl.).

Burns filed a Title IX complaint against Crawford after reviewing Crawford's testimony provided to the WTAMU Title IX investigator. ROA.339-340; ROA.702 at 38; ROA.1232.

Jeremy Middleton, who was Ecker's successor to the Title IX office, contacted Crawford to warn him that WTAMU leadership was seeking to investigate Crawford for his testimony in the Title IX case. ROA.374-76 (Crawford Depo.); ROA.1240 (Middleton Audio Recording). Middleton lamented that WTAMU administration was favoring and supporting Burns's pretextual retaliatory efforts, and he advised Crawford to leave WTAMU if he got the opportunity. ROA.1240. Middleton advised Crawford that senior leadership within TAMU System was protecting Burns and that the Title IX office at WTAMU was undermined in their efforts to investigate the complaints. ROA.1240.

As WTAMU notes, Crawford was found <u>not</u> responsible for the criminal allegations that Burns leveled against Crawford, but an administrator found that Crawford was too slow to report under the

university's definition for "prompt" reporting. Appx. 28 at Ferrara 01058. Crawford disagrees with those findings, and even Burns admitted in deposition testimony that a Title IX complaint against Crawford may not have been warranted if Crawford reported the allegations within about 24 hours, which Crawford did. ROA.716 at 96. Crawford did report the allegations to the Title IX office promptly. ROA.1033 at Ferrara 01058; ROA.364. But that did not stop Burns from seeking to terminate Crawford despite the lack of justification. *See* ROA.1194-ROA.1231.

Ultimately, Burns faced a Title IX investigation for his threats against the Title IX employees and his subordinates. ROA.445-46; ROA.717; ROA.1018-19. However, WTAMU allowed Burns to escape sanctions for his conduct with nothing more than a verbal reprimand from Randy Rikel. ROA.650.

During the Title IX investigation into Burns's conduct, Burns had a phone call with Assistant Chief Byrd in which he discussed complaints about the process and retaliation against Crawford. ROA.343-44. Crawford heard the conversation from his desk in his office. *Id.*

There was a room between Crawford's office and Byrd's office that was used as a foyer, and Crawford also used the space for his work. *Id.* Crawford had the right to be in the foyer room. *Id.*; ROA.577-82. So Crawford started

recording the conversation on his phone at his desk and moved toward the foyer between his office and Byrd's office to get better sound for the recording. ROA.343-44.

Because Crawford already knew Burns wanted to terminate him and that Burns was discussing with Byrd how to accomplish that objective, Crawford then immediately reported the retaliatory discussion to TAMU System's System Ethics and Compliance Office (SECO). ROA.343-44. Crawford emailed SECO with an attachment of the audio recording clip, stating: "This is from my desk in my office. It's that loud. I didn't catch it in time but they apparently know that Jeremie Middleton is being terminated." ROA.1430 (WTAMU-C_001854).

The recorded portion of the audio, which captures a portion of the discussion where Burns complains about documents obtained by Crawford in support of Crawford's complaint. ROA.1239. Crawford's additional email sent contemporaneously with this recording memorializes the fact that Burns and Byrd also discussed the imminent termination of then-Title IX Director Middleton (the successor to Ecker who had already been terminated due to Burns) and disciplinary action against Crawford. ROA.1432 (WTAMU-C_001853).

This recorded discussion took place loudly over a speaker phone, with the volume turned up high enough that it could be heard two rooms away. ROA.343-44; Appx. 6 at 70-76; ROA.1430; ROA.1432. Byrd's office door was not closed, and Crawford had the right to be in his office, the foyer (which Crawford also regularly utilized for his work), and the hallway. ROA.343-44 ROA.575-81. Crawford provided WTAMU with a detailed explanation of his understanding that there was no reasonable expectation of privacy in this area. Appx. 22. And Crawford, in his position, understood himself to be investigating potential wrongdoing as both a police officer and a whistleblower. ROA.343-44; ROA.1004-06.

Burns proceeded to initiate both administrative and criminal investigations against Crawford. ROA.343-44. The Texas Rangers declined to take action because Crawford did not violate any law, and Burns admitted to the Texas Rangers investigator that there was no specific policy that directly applied to the recording. ROA.1236. But before "recusing" himself, Burns appointed now-Assistant Chief Hawbaker (who replaced Byrd following Byrd's retirement) to investigate Crawford. Dkt. 45-1 at 103. Burns then directed two "external chiefs" whom were colleagues of Burns and who relied on the report of Hawbaker to make their decision. ROA.704. Although WTAMU supplied new declarations of these chiefs to state that they made

independent findings, WTAMU never disclaimed their review and reliance on Hawbaker's report. To the contrary, the investigators expressly indicated their findings were based on the report of Hawbaker and discussions with Hawbaker, who was directly supervised by Burns. *Id.*

After several weeks, Crawford requested that his suspension be lifted because the Texas Rangers decided not to take any action. Appx. 41. However, although WTAMU had not issued a decision to terminate Crawford, he was forced to resign in protest and under pressure from the multiple criminal investigations that WTAMU had wrongfully initiated against him. ROA.343-44. Despite the fact that there was no decision by WTAMU or TAMU System to terminate Crawford, Burns took it upon himself to issue a dishonorable discharge against Crawford's peace officer license. ROA.343-44; ROA.727-28.

Crawford timely filed his charge of discrimination with the Equal Employment Opportunity Commission, and he timely filed suit based on retaliation under Title VII. ROA.932-33.

After discovery, the district court granted summary judgment in favor of WTAMU based on (a) excluding from its analysis any background evidence of WTAMU's conduct occurring before the 300-day period for filing the EEOC charge; (ROA.1460); (b) disregarding evidence that WTAMU's

Chief of its University Police Department stated that he wanted to discipline Crawford for his involvement in the Title IX investigation in the recorded statement in dispute; (ROA.1461); (c) concluding that none of the allegations Crawford made amounted to a materially adverse act of retaliation; (ROA.1464-65); and (d) concluding that the retaliation was not proximately caused by WTAMU's knowledge of Crawford's protected activity.

## SUMMARY OF THE ARGUMENT

This appeal comes down to a fundamental error of the district court in applying the Rule 56 standards to Appellee WTAMU's summary judgment motion. The summary judgment evidence contains disputed facts about whether WTAMU retaliated against Detective Nathan Crawford for his participation in protected Title IX investigations into sex discrimination at a university policed department, or whether WTAMU disciplined Crawford based on a discrepancy in an email about Crawford's report of retaliation as WTAMU claims.

WTAMU retaliated against Detective Nathan Crawford because Crawford spoke in support of female officers during a widely publicized Title IX investigation in 2021 into the conduct of another officer, Aaron Price, and then complained of Chief Shawn Burns's handling of the investigation. Crawford told the Title IX investigators that he had observed conduct that

substantiated the female officers' claims, and he reported that officers feared retaliation from Chief Burns, who was widely perceived as favoring the respondent officers. Price gave Burns a copy of the Title IX report indicating that Crawford had spoken out against them, and Burns went on a mission to punish Crawford and remove him from UPD.

Crawford became the target of multiple investigations instigated by WTAMU leadership based on his participation in a sex discrimination investigation, which is a protected activity under Title IX and Title VII. WTAMU leadership attempted to criminalize Crawford's supportive testimony favoring female officers who complained of sex discrimination in a Title IX investigation, including by referring a complaint against Crawford to the Texas Rangers. Although prosecutors and outside law enforcement agencies declined to prosecute Crawford, WTAMU's extreme and persistent pressure against Crawford ultimately forced him to resign in protest, as such pressure would cause any reasonable person to remove themselves from constant threats of imprisonment under false pretenses from an employer. And even though Crawford was ultimately coerced into resignation, Burns issued Crawford a dishonorable discharge against Crawford's peace officer license,[1] which prevents Crawford from obtaining employment elsewhere

[1] State Office of Admin. Hearings (SOAH), *F-5 Hearings – Tex. Comm. Law Enforcement*, https://www.soah.texas.gov/f-5-hearings-texas-commission-law-enforcement (last accessed March 25,

that requires security clearances. The district court concluded this evidence could not be considered based on a strict reading of Crawford's EEOC charge and complaint, which contravenes well-established principles governing pleading standards under Rule 8 and under this Circuit's precedent for construing an EEOC charge. Crawford presented direct evidence that the conduct against him was retaliatory in nature, and, in any event, WTAMU's alleged reasons for taking these actions were pretextual.

WTAMU offered an email where Crawford hurriedly reported to TAMU System investigators that he had record Chief Burns stating he was going to discipline Crawford for his Title IX participation. Crawford's email stated that the record was "from his desk," and there is video footage showing that part of the recording was taken from the hallway. However, WTAMU never offered controverting evidence the fact that Crawford began the recording from his desk, which indicates that Crawford's statement was truthful. Impermissibly drawing the inferences in favor of WTAMU on this factual issue is the core of the disputed fact issue that remains.

The district court erred in drawing inferences in favor of WTAMU, instead of in favor of Crawford at the summary judgment stage as required

2025) (explaining the process for filing an administrative action based on a dishonorable discharge designation of a peace officer).

by Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 56. As a result, reversal and remand is required.

## ARGUMENT

The key inquiry for this Title VII retaliation case is whether, under the standard of review applied to summary judgment motions, WTAMU's actions were "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 2409 (2006)).

### A. Standard of Review

This Court reviews cases decided on summary judgment de novo. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). And as this Court emphasized in *Ion*, a district court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* (citations omitted). "In addition, a court 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Id.* (citations omitted). Against this framework for review, the district court erred in granting summary judgment to WTAMU on Crawford's Title VII retaliation claims.

### B. Crawford's complaints were properly exhausted, and the district court erred in disregarding background evidence in support of the actionable conduct timely filed within the 300-day period.

Crawford's retaliation complaints were properly exhausted. His EEOC charge was timely, and it identified the wrongful suspension along with administrative and criminal proceedings being initiated under false pretext. ROA.258-59.

The district court's analysis was erroneously cabined in at least two ways by its conclusion that it could disregard some of Crawford's allegations. First, the district court improperly limited the time period for which it could consider evidence of timely complained-of conduct. ROA.1460.

"[U]ntimely charges may still constitute relevant background evidence in proceeding in which current practice is at issue." *Rutherford v. Harris County*, 197 F.3d 173, 186 (5th Cir. 1999) (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 52 L. Ed. 2d 571, 97 S. Ct. 1885 (1977)).

To set aside a substantial portion of Crawford's evidence of the motivation and intent behind the actions of WTAMU's leadership, the district court concluded that it could analytically segregate and compartmentalize the factual disputes from the background evidence provided in support of Crawford's response. It was error to completely disregard this evidence.

Second, the district court concluded that Crawford's claims must be bound and limited solely to the precise allegations explicitly set forth in the EEOC charge and the complaint (which was the original complaint and had not been amended). This conclusion contradicts both the standard for pleading under Rule 8 of the Federal Rules of Civil Procedure, as well as this Circuit's precedent governing construction of a charge.

"Under Rule 8(a)(2), a pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a)(2)." *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 599 (5th Cir. 2021). Crawford was not required to plead meet a heightened pleading standard to pursue his retaliation claim based on the actionable conduct of Chief Burns issuing him a dishonorable discharge without WTAMU approval or any formal conclusion to the investigation that had been ongoing.

Additionally, "a Title VII cause of action may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Moore v. Cricket Communs., Inc.*, 764 F. Supp. 2d 853, 859-60 (S.D. Tex. 2011)

(quoting *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)); *see also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970).

Crawford was constructively discharged after enduring multiple criminal investigations wrongly initiated against him to selectively enforce discipline against Crawford for protected activities under Title IX and Title VII. Crawford included allegations about this conduct as evidence of pretext, as it shows Burns's motivation for his ongoing retaliatory conduct and is also evidence of Burns's modus operandi and intent.

Burns wrongfully issued a dishonorable discharge against Crawford's peace officer license in retaliation. WTAMU did not address this adverse action against Crawford in its summary judgment motion, but it is within the scope of Crawford's charge and complaint.

The district court erred in setting aside the dishonorable discharge issue, as well as in disregarding background evidence offered for the intent and motive of WTAMU leadership. Because the district court improperly disregarded evidence and inferences in favor of Crawford, the nonmovant, summary judgment should be reversed.

### C. Crawford presented direct evidence of retaliation that was wrongly disregarded.

The district court rejected three evidentiary issues argued by Crawford as direct evidence, and the district court concluded that evidence merely

amounted to stray remarks. Again, the district court erred in cabining the scope of evidence it was willing to review. Moreover, the district court erred in disregarding the direct statement of Chief Burns recorded by Crawford, which led to the final gauntlet of retaliatory acts against Crawford.

"A plaintiff alleging Title VII retaliation may establish her case for causation" either by "present[ing] direct evidence of retaliation" or by "provid[ing] circumstantial evidence creating a rebuttable presumption of retaliation." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414-15 (5th Cir. 2003); *see also Fierros v. Texas Department of Health*, 274 F.3d 187, 192 (5th Cir. 2001); *see Price Waterhouse v. Hopkins*, 490 U.S. 228, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1988).

When "a plaintiff is able to support the elements of her claim with direct evidence of a retaliatory motive, the *McDonnell Douglas* framework does not apply." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414-15 (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 83 L. Ed. 2d 523, 105 S. Ct. 613 (1984) ("the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."); *see also Fierros v. Tex. Dep't of Health,* 274 F.3d 187,192 (5th Cir. 2001) ("plaintiff presents direct evidence that the employer's motivation for the adverse action was at least in part retaliatory, then the *McDonnell Douglas*

framework does not apply.”); *Moore v. U.S. Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995). “[I]n such ‘direct evidence’ cases, once the plaintiff has submitted evidence that retaliation was among the motives which prompted the adverse action, the ‘burden of proof shifts to the employer to establish by preponderance of evidence that the same decision would have been made regardless of the forbidden factor.’” *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414-15 *(quoting, Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)).

“‘[D]irect evidence’ is evidence which, ‘if believed, proves the fact [in question] without inference or presumption.’” *Id.* (citing *Portis v. First Nat'l Bank*, 34 F.3d 325, 328-29 (5th Cir. 1994)). “In a Title VII context, direct evidence includes any statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but *a* basis—for the adverse employment action.” *Id.* (citing *Fierros,* 274 F.3d at 192, and *Portis,* 34 F.3d at 328-29) (emphasis original).

There are direct statements of Burns’s intent in taking adverse employment actions against UPD officers and Title IX employees who file complaints. ROA.1237. Additionally, Burns immediately initiated the administrative and criminal investigations against Crawford follow immediately after Burns learned of the audio recording of his conversation

with Byrd in which he discussed whether he might be able to make Crawford or Title IX employees the subject of discipline for submitting evidence in a Title IX proceeding. ROA.343-44; ROA.1239.

Even setting aside the recording of Burns Crawford made because Burns was specifically discussing discipline of Crawford for the protected activity, the district court's analysis amounts to a legal conclusion or final finding of fact that the recorded statements that Burns would "stack bodies" about university employees in UPD was limited only to the Title IX staff, and it improperly drew inferences against Crawford.

The district court's analysis did not follow the established standards under Rule 56. Therefore, the summary judgment should be reversed.

### D. WTAMU's Purported Explanations Were Mere Pretext for Retaliation.

If the evidence of retaliatory statements by Burns, along with the statements of two former WTAMU Title IX directors, for some reason does not amount to direct evidence of retaliatory intent, the same evidence is at least evidence of pretext under the *McDonnell Douglas* framework. The evidence and testimony demonstrates that Burns's true motivation in initiating multiple complaints and investigations against Crawford was in retaliation for Crawford's participation in Title IX proceedings.

There are direct statements of Burns's intent in taking adverse employment actions against UPD officers and Title IX employees who file complaints. ROA.1237. Additionally, Burns immediately initiated the administrative and criminal investigations against Crawford follow immediately after Burns learned of the audio recording of his conversation with Byrd in which he discussed whether he might be able to make Crawford or Title IX employees the subject of discipline for submitting evidence in a Title IX proceeding. ROA.343-44; ROA.1239.

A short time period between the protected activity and the adverse employment actions raise a presumption that the employer's action was retaliatory. *January v. City of Huntsville*, 74 F.4th 646, 654 (5th Cir. 2023). Here, there was an ongoing Title IX proceeding against Burns initiated by Crawford, and Crawford recorded Burns and reported the retaliatory discussion to SECO on October 11, 2022. ROA.1432; ROA.1430. Burns had Byrd file a complaint against Crawford on December 7, 2022, and Burns admitted in writing that he would have initiated criminal and administrative proceedings sooner but that he hadn't done so yet only because he had been instructed by his supervisors to wait. This short timeline, coupled with the admission that actions would have been taken sooner and previous statements by Burns evidencing retaliatory intent, raise a presumption that

both the *initiation and prosecution* of the criminal complaint and the internal administrative proceedings were retaliatory and pretextual.

Still, in an indirect evidence case, when *McDonnell Douglas* applies, a "plaintiff must offer sufficient evidence that the proffered reason is a pretext for retaliation." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 437 (5th Cir. 2022).

Pretext can be shown by the "falsity of the employer's explanation," *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577-78 (5th Cir. 2020), or that "the reasons given for her adverse employment action were shifting and inconsistent," *January v. City of Huntsville*, 74 F.4th 646, 654 (5th Cir. 2023).

Pretext may also be shown by evidence that the employer treated the plaintiff differently from other employees who were alleged to have committed workplace misconduct. *Garcia v. Prof'l Contract Servs.*, 938 F.3d 236, 245 (5th Cir. 2019); *see also Doe v. William Marsh Rice Univ.*, 67 F.4th 702, 711 (5th Cir. 2023) (noting in the Title IX context that universities face liability for selectively enforcing punishment based on protected characteristics).

Here, again, Crawford has direct evidence that Burns had a retaliatory intent in the actions taken against him. Burns was recorded in a call

discussing with Byrd that Crawford and other employees should be punished for their participation in a Title IX proceeding against him. ROA.343-44; ROA.1239. The record also shows that Burns flaunted his ability to retaliate against employees who opposed him in the Title IX proceedings. ROA.1237. The direct evidence also rebuts WTAMU's proffered reasons for the actions taken against Crawford.

Additionally, WTAMU's reasons for taking action against Crawford are false, shifting, and unworthy of credence. And even Burns didn't take this heavy handed approach with all of his officers—rather, Burns only took such drastic action against Crawford because Crawford had initiated a Title IX proceeding against Burns for retaliation.

Burns had selectively enforced policy against Crawford before. After Burns reviewed the Title IX report in the Aaron Price investigation, Burns initiated discipline against Crawford and sought to have him terminated, despite the fact that Burns did not initiate similar complaints against other officers. ROA.343-44.

This time, after Crawford recording him discussing *further* retaliation, Burns jumped straight to filing a criminal complaint. ROA.726. Burns had no basis, or at best a shifting basis, for why he believed there was any reasonable expectation of privacy in his loud, open-door speaker phone

conversation with Byrd. WTAMU initially tried to argue that there was some reasonable expectation of privacy simply because Burns and Byrd were talking in their offices, but later, after admitting in deposition that this loud, open-door speaker phone are not private, ROA.726, Burns tried to newly claim that his conversation was somehow private because he personally considered Byrd to be his Title IX "advisor." ROA.712-13. But Byrd is not a lawyer, and Byrd was not officially recognized as an advisor for Burns in the Title IX proceeding. *Id.* Further, there was no attempt to explain how anyone else, let alone Crawford, could have known Byrd might have been Burns's advisor. That is such an implausible story that it is unworthy of credence, but even if the Court found some possible veracity, the Court should consider that the shifting nature of this story demonstrates it is actually pretext for Burns's retaliatory act of making a criminal complaint against Crawford.

Burns's eventual interview with a Texas Ranger investigator demonstrates that Burns went overboard, without evidence, in rushing to file criminal charges against Crawford unlike any action Burns had taken against other officers. WTAMU claims that retaliatory misconduct could be excused because Crawford's actions could "potentially" have amounted to some kind of violation or that Crawford's report was somehow untruthful. But Crawford's conduct did not violate any law, because Crawford was recording

a conversation where there was no reasonable expectation of privacy, out in the open where he had a right to be. ROA.578. And the evidence demonstrates that the recording did not violate any policy. Appx. 34 (Burns admitting to Texas Ranger investigator that WTAMU UPD did not have any specific policy that applied to the recording). In other words, not only was the conduct not criminal in any manner, but also Burns couldn't cite a specific applicable workplace policy that Crawford had violated to the investigator.

Burns ultimately attempted to justify action against Crawford based on one line in one of Crawford's emails to SECO: "This is from my desk in my office." ROA.1430 (WTAMU-C_001854). Neither Hawbaker nor the external chiefs—nor anyone else with WTAMU for that matter—interviewed Crawford to question him about this statement. Crawford requested that an interview be conducted in person so he could have his police association lawyer present, but WTAMU did not schedule an in-person interview. ROA.597-98. Instead, Hawbaker finalized his report with recommended findings against Crawford. *Id.*

WTAMU's alleged reasons for initiating these investigations and selectively enforcing them against Crawford, for suspending Crawford, and for taking action against Crawford's peace officer license are pretextual. With

respect to Burn's initiation of Title IX proceedings against Crawford and for seeking termination of Crawford based on those proceedings, Chief Burns admitted in his deposition that he should have taken a different course of action with knowledge that Crawford reported the sexual harassment allegations within about a day of receiving the report. Despite the fact that Crawford was not found to have knowingly violated any law or committed any fire-able offense, Burns sought to have Crawford terminated. Neither WTAMU nor the TAMU System provided Burns with permission to terminate Crawford at the time, but Burns continued to seek to punish Crawford. This is evidenced by the fact that Burns told Assistant Chief Hawbaker that he would not consider promoting Crawford because he was "lumped in" with the Title IX witnesses. Burn's continuous pursuit to punish Crawford despite the merits of the complaint filed by Burns indicates WTAMU's selective enforcement of its policies against Crawford was motivated by a desire to retaliate against Crawford for providing testimony in favor of the female officers who were the Title IX complainants.

With respect to Burns's initiation of a criminal investigation for Crawford's recording of Burns's open conversation about retaliating against Crawford, there was never any basis for this action. Burns admitted in deposition that loud conversations taking place in the open within the police

department are confidential. There was no reasonable expectation that this conversation was private, given that Chief Burns and Assistant Chief Byrd were loudly discussing how to retaliate against Crawford with the office door open. Crawford heard the conversation from his office desk, began recording the conversation, and moved into the foyer area (which Crawford also used for his work and where he indisputably had the right to be) to continue recording. While Crawford could hear the entire conversation from his office, he knew the sound quality of the recording would be better closer to the open door. Burns claimed in his deposition that he personally thought that Assistant Chief Burns was his advisor (Chief Burn's advisor) for purposes of a Title IX complaint. But Burns conceded he did not formally designate Byrd as his advisor with WTAMU, and WTAMU did not offer any official recognition Byrd as a Title IX advisor. Certainly Crawford had no knowledge of this alleged relationship, and the loud, open discussion about Crawford was fair game to record, as Crawford was simply recording what could be heard in the open where he was allowed to be. Burns had to admit during the investigation that this recording really didn't violate any policy that would have applied to the situation. The shifting story about why this conversation was purportedly confidential, or a violation of any policy for that matter, is evidence of pretext.

Burns was, true to his word, "stacking bodies" in the "wake." *See* ROA.436; ROA.750-52. Just as he told Lt. Ferrara, Burns would "talk with HR," "talk with OGC," and "find a way" to get rid of Crawford for making a complaint. *See* ROA.1237. Crawford actually obtained direct evidence that Burns was planning to retaliate against him and reported it to SECO. But instead of punishing Burns, WTAMU supported Burns in retaliating against Crawford further. Ultimately, without justification and under false pretext, Burns took matters into his own hands and issued a dishonorable discharge against Crawford.

Summary judgment should be reversed.

### E. The District Court Erred in Concluding Retaliatory Acts were not "Materially Adverse."

Under *Hamilton v. Dallas County*, this Court held that employment law claims under Title VII extend to an employer's actions affecting an employee's "terms, conditions, or privileges of employment. *Hamilton v. Dallas County*, 79 F.4th 494, 497 (5th Cir. 2023) (en banc). This district court erred in disregarding summary judgment evidence in favor of Crawford based on the legal conclusion that some of the retaliatory conduct did not count as being "materially adverse action."

Because the district court erroneously disregarded evidence based on an erroneous legal conclusion, the summary judgment should be reversed.

## F. WTAMU Failed to Negate Evidence of Causation.

The evidence shows that Burns initiated, directed, encouraged, and finalized all retaliatory acts against Crawford. The causal link is established, or at minimum, material facts remain in dispute.

Burns was the authority who initiated both an administrative complaint and a criminal investigation against Crawford. ROA.343-44. While WTAMU cites the "recusal" of Burns from the process and offers declarations of the "outside" system chiefs who were brought in to investigate, important additional context indicates Burns in fact influenced the outcome of the administrative investigation. Before "recusing" himself, Burns appointed now-Assistant Chief Hawbaker (who replaced Byrd following Byrd's retirement) to investigate Crawford. Hawbaker is the source of the memo to the external chiefs. So while the external chiefs claimed to have performed their own investigation, they do not disclaim the influence of Hawbaker's report.

Additionally, Burns issues a dishonorable discharge without approval to terminate Crawford. Regardless of the effort to construct an administrative façade on Burns's retaliatory actions, TAMU System never actually provided WTAMU or Burns permission to terminate Crawford. While WTAMU now claims in argument that decision was imminent, there

is no official record of any decision. The months-long review by TAMU System following the IA investigation, actually raises the inference that WTAMU did not receive permission or approval from TAMU System to terminate Crawford based on this sham internal investigation. To put a finer point on it, WTAMU policy required dismissal of internal administrative actions that were pending for over 45 days. *See* ROA.1428 (email from Crawford citing this policy to obtain dismissal of a prior baseless internal administrative action). The record evidence shows that TAMU System and WTAMU never made a formal decision after review of the investigation, and Burns took it upon himself to ensure that Crawford was punished for his participation in protected activity.

At the end of the day, Burns was the judge, jury, and executioner in WTAMU's retaliation against Crawford for participating in Title IX proceedings. The record demonstrates a causal link between the retaliatory intent and the actions against Crawford. Or at the least, material fact issues remain in dispute.

The summary judgment should be reversed.

## CONCLUSION

The well-established standards applicable to summary judgments required the district court to review all of the evidence and to draw inferences in favor of Crawford, the nonmovant. Instead, the district court went so far as to whole-sale adopt WTAMU's narrative about Crawford, even stating that he lied when that conclusion was far from established by the evidence. To the contrary, the evidence showed Crawford truthfully reported that he recorded the Chief stating he would discipline Crawford because of the Title IX investigation. Adopting WTAMU's false narrative is the opposite of what the summary-judgment standard requires. Because the district court erred concluding that evidence could be disregarded or even draw inferences in favor of WTAMU, the summary judgment must be reversed.

For these reasons, Appellant Nathan Crawford respectfully requests that the Court reverse the summary judgment of the district court and mandate that he be allowed to pursue his Title VII retaliation claims. Crawford requests all further relief, in law or at equity, general or special, to which he may be justly entitled to receive.

SUBMITTED BY:
S/Kyle Thomas Carney
Carney Law, P.L.L.C.
9800 Hillwood Parkway
Fort Worth, TX 76177

## CERTIFICATE OF SERVICE

I certify that on January 5, 2026, an electronic copy of this brief was served on each party in this case in accordance with the Federal Rules of Appellate Procedure. The name and address of the party or lead counsel served, and the manner of service, are indicated below:

Mohmed Idris Patel (mohmed.patel@oag.texas.gov), Assistant Attorneys General, Office of the Attorney General, P.O. Box 12548, Capitol Station, Austin, TX 78711-2548.

S/Kyle Thomas Carney

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 6,317 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft ® Office Mac Word in 14-point, Georgia type style.

S/Kyle Thomas Carney